UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.                                                                MEMORANDUM OPINION
                                                           AND ORDER
                                                            Criminal No. 10-187

Amina Farah Ali and Hawo Hassan,

      Defendants.
_____

      Jeffrey S. Paulsen, Assistant United States Attorney, and Steven Ward, Trial Attorney, U.S. Department of Justice, counsel for Plaintiff.

      Daniel M. Scott, Kelley, Wolter & Scott, P.A., counsel for Defendant Amina Farah Ali.

      Thomas M. Kelly, Kelly & Jacobson, counsel for Defendant Hawo Mohamed Hassan.
_____

      Before the Court are the parties' motions in limine.

      **1.**      **Government's Motion Regarding Admissibility of Transcripts of Intercepted Calls [Doc. No. 108].**

      The government seeks a ruling from the Court that the transcripts containing English language translations of intercepted telephone calls in the Somali language be admitted as substantive evidence at trial. The government

1

asserts that the investigation of this case involved wiretaps on defendant Amina Ali's home and cellular telephones.  The government intends to introduce at trial numerous telephone calls in which Ali speaks in the Somali language with her co-defendant Hawo Hassan as well as other co-conspirators.

The law is well settled that transcripts of foreign language recordings are admissible and are used by the jury during trial and deliberations.  See United States v. Chavez-Alvarez, 594 F.3d 1062, 1069 (8th Cir. 2010); United States v. Placensia, 352 F.3d 1157, 1165 (8th Cir. 2003).  The government asserts that it intends to place the translated transcripts in three binders for the court, counsel and for the jury.  The government also agreed, in response to the defendants' objections to the transcripts, to delete from the transcripts: all FBI logos from the transcripts; all editorial comments; and any reference to an unknown speaker believed to be a particular person.

The defendants also object to the fact that "youth" and "jihad" have been capitalized in the English translations prepared for the government, because such capitalization places undue emphasis on these words.  The government maintains that it was proper to capitalize "youth" as such term is commonly used to refer to the terrorist organization al-Shabaab.

The Court will order that the words "youth" and "jihad" not be capitalized because the government has not established that the translator used to create the English translations is qualified as an expert who can testify that when the speakers in the taped conversations used the term "youth" the speaker was referring to al-Shabaab.  See <u>United States v. Gonzalez</u>, 365 F.3d 656 (8th Cir. 2004) (in a case involving English translation of foreign drug codes, party seeking admission of translation should ask translator to identify English word that most closely captures ordinary meaning of foreign word) <u>judgment vacated on other grounds</u> <u>Gonzalez v. United States</u>, 543 U.S. 1107 (2005).

The parties are currently conferring about whether all taped conversations should be played to the jury, or whether the parties can agree to only certain tapes being played.

**2.  Defendants' Motion for Financial Information on Expert Compensation [Doc. No. 111].**

Defendants request information as to the compensation that will be paid to the government's expert witnesses.  Defendants are concerned that one such expert, Evan Kohlmann, primarily supports himself as a consultant to the government.  The other expert, Matthew Bryden, is a consultant to the United

Nations, to USAID and the principal author of the annual United Nations Report on the Somali arms embargo. The government has disclosed that Bryden is not compensated for his expert testimony, because UN rules prohibit such compensation.

With respect to Kohlmann, the government has disclosed that he has been paid an aggregate sum of approximately $100,000 from 2003 through September 2011, and for this case in particular, Kohlmann has thus far been paid $18,512 under a contract which provides for services totaling $20,887. The defendants request more particularized information - the amount paid per criminal case in which he was retained as an expert. The Court finds the defendants' request to be reasonable and will grant such request.

### 3. Defendants' Motions to Exclude Rule 404(b) Evidence [Doc. No. 112]

The government has provided notice that it intends to offer evidence at trial pursuant to Rule 404(b) of the Federal Rules of Evidence [Doc. No. 106]. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The government has provided notice that it intends to offer at trial evidence of funds transferred to and communications with individuals that are members of other terrorist organizations, such as Isse Kamboni, who is a lieutenant of the Specially Designated Global Terrorist ("SDGT") Hassan Abdullah Hersi al-Turki, under Executive Order 13224 and head of the Ras Kambooni Brigades, and evidence that defendants transferred funds to and communicated with Hassan Dahir Awyes, another SDGT and head of Hisbul Islam, another opposition militia. The government also intends to offer evidence that prior to the charged conspiracy, defendant Ali sent funds to 20 men so that they could travel to Somalia to join the jihad, and that defendant Ali sent money to an individual in Somalia who was the operator of a safe house in Somalia where young men from Minnesota and elsewhere resided while fighting for al-Shabaab. Finally, the government intends to introduce evidence that defendant Ali assisted in and coordinated the funding of the travel for seven men to Somalia in September 2008.

In response, defendant Ali argues the proffered Rule 404(b) evidence has little probative value, and carries either a great risk of confusing the jury about the facts and issues in this case, or is highly prejudicial.  For example, with regard to evidence that defendants communicated with non al-Shabaab members, such communication and support provided to these individuals is not unlawful under § 2339B, thus such evidence does not support the government's case and merely shows defendants had contact with bad men.

As to evidence that defendants provided support to reputed al-Shabaab members before al-Shabaab was designated a Foreign Terrorist Organization ("FTO"), defendants argue that unless such evidence is integral to the government's case, evidence that defendant provided "legal" support contrasted with "illegal" support would confuse the jury.

Finally, defendants assert that given the amount of evidence the government intends to offer at trial, the probative value of the proffered Rule 404(b) is outweighed by its prejudicial effect.

Rule 404(b) is considered a rule of inclusion, therefore such evidence should be excluded when it is relevant only to a defendant's character.  <u>United States v. Thomas</u>, 58 F.3d 1318, 1321 (8th Cir. 1995).  Where a defendant has put

her state of mind at issue, such evidence is admissible in the government's case in chief to show specific intent. United States v. Yellow, 18 F.3d 1438, 1441 (8th Cir. 1994).

In this case, the government asserts that both defendants have made statements to law enforcement that they did not knowingly provide support to an FTO, only that they were raising money for the poor and needy. The evidence described in its Rule 404 (b) Notice is necessary to address each defendant's knowledge and intent with regard to their conduct that forms the basis of the criminal charges asserted against them.

Based on the written submissions and the arguments of counsel, the Court finds that the evidence listed in the Rule 404(b) Notice [Doc. No. 106] is admissible pursuant to Rule 404(b) because the defendants' have put their state of mind at issue in this case. Thomas, 58 F.3d 1322 (finding that prior bad acts evidence was admissible because mental state is a material issue). Accordingly, the defendants' motion to exclude this evidence will be denied.

    **4.**    **Defendants' Motion to Limit Expert Testimony [Doc. No. 114]**

        **A.**    **Standard**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The role of the trial court is to serve as "gatekeepers to 'insure that the proffered expert testimony is both relevant and reliable.'" Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006) (quoting Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003)).  In Daubert v. Merrell Dow Pharmaceuticals, Inc., the Supreme Court provided some general observations for the lower courts to consider in making determinations as to whether the scientific knowledge is relevant and reliable, such as whether it has been tested, subjected to peer review and publication, what is the known or potential rate of error, and whether it is generally accepted. " 509 U.S. 579, 593-95 (1993).

In Kumho Tire Company, Ltd. v. Carmichael, the Court extended the Daubert reasoning to non-scientist experts stating:

> We conclude that Daubert's general principles apply to the expert matters described in Rule 702.  The Rule, in respect to all such matters, 'establishes a standard of evidentiary reliability.'  It 'requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility.'  And where such

8

testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the [the relevant] discipline.'

526 U.S. 137, 149 (1999) (quoting Daubert, 509 U.S. at 590-92) (citation omitted).

When addressing the reliability factor, the Court held that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Moreover,

> [T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

Bonner v. ISP Tech, Inc., 259 F. 3d 924, 929-30 (8th Cir. 2001) (citing Hose v. Chicago NW. Transp. Co., 70 F. 3d 968, 974 (8th Cir. 1996).)

### B.   Analysis

The government intends to call as an expert witness Matthew Bryden. Generally, Bryden will testify on the background on Somalia and the Somali

conflict; details about al-Shabaab; al-Shabaab leaders; identifying an al-Shabaab official Hameed Hassan Mohamed Ali, aka Hassa Afgoye; common ways to refer to al-Shabaab; military engagements involving al-Shabaab and suicide bombings for which al-Shabaab claims responsibility; and leaders of other militias not part of al-Shabaab but mentioned in intercepted calls.

The government further asserts that Bryden has been qualified to provide similar expert testimony in other criminal cases. See, e.g., United States v. Hammoud, 381 F.3d 316, 337-38 (4th Cir. 2004), vacated on other grounds by 543 U.S. 1097 (2005) relevant portions reinstated by 405 F.3d 1034 (4th Cir. 2005).

Defendants do not challenge Bryden's qualifications or the reliability of his opinions, they simply move to limit his testimony to facts put at issue in this case. Defendants anticipate that Bryden will testify about the Somalia he knows and has observed, but defendants are concerned about whether it will be possible to discern when he is talking outside his knowledge base - and is simply commenting on what he reads in the newspaper.

The Court finds Matthew Bryden is qualified to testify concerning the areas listed above, and that defendants' concerns regarding the scope of Bryden's testimony can be addressed through objections and on cross-examination. The

motion to limit Bryden's testimony is thus denied at this time.

The other government expert, Evan Kohlmann, has prepared three expert reports, but the government only intends to introduce Kohlmann Expert Reports II and III.  Kohlmann Expert Report II addresses the official website of al-Shabaab, and different images of al-Shabaab activities.  Kohlmann Expert Report III addresses al-Shabaab propaganda and messaging, torture and beheadings and the connection between al-Shabaab and al-Qaeda.

The defendants characterize Kohlmann as a "newspaper reader" or its internet equivalent, with no specialized education with respect to Somalia or al-Shabaab.  Defendants further assert that Kohlmann does not speak Arabic or Somali and he has never visited Somalia, and that prior to his retention to provide an expert opinion in this case, Kohlmann did not research Somali politics or the Somali government.

Contrary to the arguments of defense counsel, the Court finds that Kohlmann is qualified to provide an expert opinion in this case.  He graduated in 2001 from Georgetown University's School of Foreign Service with an honor's degree in international politics, and he later obtained a law degree from University of Pennsylvania Law School.  Since graduating from law school, he

worked as a Senior Terrorism Consultant for the Investigative Project - which is an open source counter-terrorism think-tank and policy group. He was a consultant for the Office of the High Representative in Sarajevo, Bosnia-Herzegovina. Presently, he is a Senior Investigator with The Nine/Eleven Finding Answers Foundation, an On-Air Terrorism Analyst for NBC/MSNBC, and the Founder/Senior Partner of Flashpoint Global Partners.

Pursuant to Kohlmann's Curriculum Vitae, Kohlmann has dedicated his career to the study of international Islamic organizations, specializing in al-Qaeda and related terrorist groups. While at the Investigative Project, he provided regular briefings to U.S. law enforcement agencies and delivered presentations to former "Counter-Terrorism Czar" Richard Clarke, at the White House during the Clinton administration. He has personally interviewed several notorious terrorists and has followed terrorist networks on the internet.

Kohlmann has also written several articles on the topics of his proposed testimony. His published and peer-reviewed work catalog his extensive knowledge concerning international Islamic organizations. He has also authored a book about the foreign mujahideen in Bosnia that has been used as an academic textbook at several universities.

Based on the above, the Court finds that Kohlmann is qualified to provide expert opinions consistent with his Expert Reports II and III.

Defendants also challenge the reliability of Kohlmann's opinions, arguing that such opinions are based newspaper articles, which is inadmissible hearsay, and that laundering such evidence through an "expert" does not make such evidence admissible.

The government asserts that Kohlmann's methodologies are reliable.  He gathers information from identifiable open sources, including original material from terrorist groups such as videos, audio recordings and communiques.  He also consults reliable secondary sources such as reports by other experts in the field, textbooks and newspaper articles.  He cross-checks the information with other existing information as a way of ensuring his conclusions are consistent with the most reliable sources.

The government further asserts that Kohlmanns' testimony will be helpful to the jury.  The conspiracy charge requires the government to prove that the defendants acted with knowledge that al-Shabaab was designated an FTO, or that it had engaged in the terrorist activities that led to designation.  The government must also prove that defendants intended the funds to go to al-

Shabaab, which requires the government to prove that the conspirators were members of al-Shabaab. Kohlmann's testimony is probative of these elements.

For example, Kohlmann will testify regarding several communiques posted to the official al-Shabaab website, and that these communiques claim responsibility for certain events. Kohlmann's testimony as to these claims of responsibility, their source and their authenticity will assist the jury in understanding the discussions between the conspirators. Kohlmann would also describe communications between al-Shabaab and al-Qaeda, without which background, the government convincingly argues, the jury would not realize that Afgoye had admitted that he is al-Shabaab and that Defendant Ali knew it. In an April 2009 telephone call, Afgoye stated that his group hosted a lecture presentation entitled "Here we are at your service, Osama", and that Afgoye told Ali "we simply accepted his calling; the sheikh had issued a decree."

Kohlmann has been qualified as an expert in a number of criminal trials in federal court. See, e.g., United States v. Kassir, No. 04 CR 356, 2009 WL 910767, at *7 (S.D.N.Y. Apr. 2, 2009) (provided expert opinion on history of al-Qaeda); United States v. Paracha, No. 03 CR 1197, 2006 WL 12768, at *20 (S.D.N.Y Jan. 3, 2006) (same). His methodologies have also been challenged in some of these

cases. For example, in <u>Kassir</u>, the district court addressed a similar challenge to Kohlmann's qualifications and methodologies. The court found that Kohlmann had the necessary qualifications and experience to offer an expert opinion, and that his methods involved more than "cherry-picking" information from websites and other sources. <u>Id.</u> (quoting <u>Paracha</u>, 2006 WL 12768, at *20). The court further accepted Kohlmann's reliance on secondary sources "because other experts in his field reasonably relied on them, 'similarly to law enforcement officers who offer expert testimony on the workings of criminal organizations.'" <u>Id.</u> (quoting <u>Paracha</u> at *21). <u>See</u> <u>also</u> <u>United States v. Sabir</u>, No. S4 05 Cr. 673, 2007 WL 1373184 (S.D.N.Y. May 10, 2007); <u>United States v. Benkahla</u>, 530 F.3d 300, 309 n.2 (4th Cir. 2008) (finding "Kohlmann's qualifications as an expert, . . . were obviously substantial and the district court acted well within its discretion in determining that they were sufficient").

Although Kohlmann's previous expert testimony was related to the terrorist organization, al-Qaeda, the Court finds that Kohlmann has nonetheless demonstrated the necessary level of expertise and experience with regard to the terrorist organization at issue in this case, al-Shabaab. He has authored an article on al-Shabaab (Government Ex. 7), and completed collaborating on an article

with Lorenzo Vidino on al-Shabaab and the Somali conflict.  (Government Ex. 8).  The government has noted that Kohlmann will testify about areas to which the defendants have raised no objections - the use of the internet and other electronic media as recruitment and proselytization tools; and the identification of jihadist computer images and their sources.  Accordingly, defendants' motion to exclude the expert testimony of Evan Kohlmann will be denied.

### 5.     Defendant Hassan's Renewed Motion for Severance [Doc. No. 107]

Defendant Hassan renews her motion for severance, arguing that the weight of the evidence, and specifically the Rule 404(b) evidence to which the government has noticed that it will offer at trial, relates to her co-defendant.  The Court has previously held that severance is not warranted simply because the great weight of evidence is against co-defendant Ali.  (See Order dated June 22, 2011 p. 4 [Doc. No. 99]).  Severance is only warranted if the jury could not reasonably be expected to compartmentalize the evidence, and defendant Hassan has not made such a showing.  Accordingly, the renewed motion for severance will be denied.

**IT IS HEREBY ORDERED** that:

1.     The Government's Motion Regarding Admissibility of Transcripts of

Intercepted Calls [Doc. No. 108] is GRANTED as follows: Transcripts of Intercepted Calls shall be given to the jury for use during trial and deliberations contingent upon the government removing all logos of governmental entities, removing all editorial comments, removing references to an unknown speaker believed to be a particular person, and by not capitalizing the words "youth" and "jihad";

    2.    Defendants' Motion for Financial Information on Expert Compensation [Doc. No. 111] is GRANTED.  Prior to trial, the government shall provide defendants particularized information as to compensation paid Evan Kohlmann by the government in prior cases in which he rendered expert testimony;

    3.    Defendants' Motion to Limit Rule 404 (b) Evidence [Doc. No. 112] is DENIED;

    4.    Defendants' Motion to Exclude or Limit Expert Testimony [Doc. No. 114] is DENIED; and

5. Defendant Hassan's Renewed Motion for Severance [Doc. No. 107] is DENIED.

Date: September 30, 2011

                                              <u>s/ Michael J. Davis</u>
                                              Michael J. Davis
                                              Chief Judge
                                              United States District Court