UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

v.                                    **MEMORANDUM OPINION
                                          AND ORDER**
                                   Criminal No. 10-187(MJD)

Amina Farah Ali,

       Defendant.
_____

       Jeffrey S. Paulsen, Assistant United States Attorney, and Steven Ward, Trial Attorney, U.S. Department of Justice, counsel for Plaintiff.

       Daniel M. Scott, Kelley, Wolter & Scott, P.A., counsel for Defendant Amina Farah Ali.

_____

       This matter is before the Court on remand pursuant to the decision of the Eighth Circuit Court of Appeals affirming in part and vacating in part this Court's Orders holding Defendant Ali in criminal contempt. For the reasons set forth below, the Court finds Ali violated 18 U.S.C. § 401 by failing to comply with the Court's Order of September 30, 2011, and that finding Ali in criminal contempt did not violate her rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb-1) (1993).

1

**Background**

Defendant Ali was charged with one count of conspiracy to provide material support to a designated foreign terrorist organization, and twelve counts of providing material support to a foreign terrorist organization. The Indictment alleged that Defendant Ali and co-defendant Hawo Hassan provided material support to al-Shabaab, a group based in Somalia and designated a foreign terror organization by the U.S. Department of State on February 26, 2008. Given the nature of the charges, and the fact that al-Shabaab is credited with a number of suicide bombings - some involving young men that traveled to Somalia from Minnesota - the case was covered extensively in the press and on the internet.

The nature of the charges - providing material support to a terrorist organization - and the fact that the case had become high profile, raised security concerns for the Court[1]. As a result, additional security measures were put into place. For example, additional court security officers and U.S. Marshals were in the courtroom during all proceedings, and signs were placed in the lobby of the Courthouse detailing court rules as to electronic devices and decorum in the

---

[1] The Court will outline only a few examples of the additional security measures put in place for the Ali trial.

2

Somali language. Court security officers were also briefed on the procedures to be followed in the event they observed persons violating such court rules.

The Court also reached out to Somali community leaders and elders for assistance in enforcing courtroom decorum, and designated a separate room, outside of the courtroom, to be used for prayer. In addition, specific security procedures were imposed for the reading of the verdict because the Court had concerns as to the public's reaction to the verdict. For example, only a certain number of persons were allowed in the courtroom during the reading of the verdict, and no persons were allowed either in the atrium outside of the courtroom, or in the lobby of the courthouse, when the verdict was to be read.

**Contempt Findings**

During a pretrial hearing, court staff observed that Ali did not comply with the "all-rise" call, which requires all persons in the courtroom to rise when court is either called into session or in recess. Upon learning this information, the Court issued an Order, informing all parties to follow the Court's Rules of Decorum, which included complying with the "all-rise" call, and that failure to do so would result in sanctions. [Doc. No. 130]

On the first day of trial, Ali did not rise when court was called into session.

The Court inquired of Ali whether she was aware of the prior Order requiring her to stand. The Court further informed Ali that her failure to stand would result in her being taken into custody and that she may face further sanctions. Ali responded that she was aware of the Court's Order, and that she would continue to remain seated despite the imposition of sanctions, as rising violated her religious beliefs. The Court nonetheless gave Ali the opportunity to consider the consequences of her conduct, and a brief recess was called. When the proceedings resumed and the "all-rise" call was given, Ali again refused to stand. On a third occasion, at which time the prospective jurors were present in the courtroom, Ali again failed to stand when court was called into session.

At the lunch recess, the Court again inquired of Ali as to whether she understood the Court's prior Order requiring her to stand. Ali affirmed that she understood the Court's Order, and again stated her refusal to stand was based on her religious beliefs, and that she would continue to refuse to stand. She informed the Court that the decision not to stand was made despite the Court's warning that her pretrial release would be revoked and that she would be held in criminal contempt for her continued failure to rise.

Thereafter, this Court found Ali in criminal contempt of court pursuant to

18 U.S.C. § 401[2], revoked her pretrial release, and detained her until further Order of the Court. [Doc. No. 132] At the end of the first day of trial, the Court found that Ali failed to rise on ten occasions, and that for each instance of contempt, she was sentenced to five days imprisonment, to be served consecutively. [Doc. No. 133]

On the second day of trial, the Court again inquired of Ali as to whether she understood the Court's Order requiring her stand, and the consequences of failing to stand. The Court and Ali then had a brief discussion, on the record, concerning those aspects of Ali's religious beliefs that formed the basis for her decision not to stand when the "all-rise" call was given. After this discussion, Ali informed the Court that she understood the Court's Order, and that after discussing the issue with clerics, she had made the decision that she would remain seated when the "all-rise" call was given. At the end of the second day of trial, the Court found that Ali failed to rise on ten occasions, and sentenced her to five days imprisonment, to be served consecutively, for each occasion she failed

---

[2]Section 401 provides that the Court may subject a person to a fine or imprisonment or both if such person engages in "misbehavior [] in its presence or so near thereto as to obstruct the administration of justice" or "disobedience or resistance to its lawful writ, process, order, rule, decree or command."

5

to stand. [Doc. No. 136]

The next day, Ali requested the opportunity to speak with the Court out of the hearing of the jury. The Court granted the request, and allowed her to approach the bench. During this discussion, which is also a part of the record, Ali informed the Court that based on their exchange the previous day, and the way she was treated by the Court, she had changed her mind and would thereafter respect the Court's Order and stand when the "all-rise" call was given.

**Appeal of Contempt Orders**

Ali appealed the contempt orders issued against her on the bases that her conduct did not constitute misbehavior which obstructed the administration of justice and that the Court erred in not considering whether the requirement to rise furthered a compelling governmental interest that could be accomplished by less restrictive means, pursuant to RFRA.

The Eighth Circuit affirmed the Court's first contempt citation, finding that Ali failed to make a formal objection to the Order requiring her to stand prior to violating the Order, even though she was aware of the Order in advance. United States v. Ali, 682 F.3d 705, 708 (8th Cir. 2012). With respect to the remaining contempt citations, the Eighth Circuit found that Ali had challenged the validity

of the Order, telling the Court that she could not comply with the Order without violating her religious beliefs. Id. With respect to the remaining contempt citations, the Eighth Circuit found that RFRA applied and that this Court erred in failing to consider whether RFRA required accommodation to Ali's religious beliefs. Id. at 709.

RFRA provides:

(a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--

    (1) is in furtherance of a compelling governmental interest; and

    (2) is the least restrictive means of furthering that compelling governmental interest.

(c) Judicial relief. A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

To state a claim under RFRA, a person must show that a governmental policy or action violates her right to exercise religion freely, as such policy or

action "substantially burdens h[er] sincerely held religious belief." Ali, at 709 (quoting Wier v. Nix, 114 F.3d 817, 820 (8th Cir. 1997)). To substantially burden one's free exercise of religion is to:

> significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion.

Id. at 709-10 (quoting Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008)). RFRA also "extends free exercise rights to religious practices that are not compelled by or central to a particular belief system." Id. at 710. "Thus, in a RFRA analysis, a rule imposes a substantial burden on the free exercise of religion if it prohibits a practice that is both 'sincerely held' by and 'rooted in [the] religious belief[s]' of the party asserting the claim or defense." Id.

The Eighth Circuit found that the record established that Ali's refusal to stand was rooted in her sincerely held religious beliefs and that the court order substantially burdened the free exercise of her religion. See id. Therefore, once Ali raised her objection, that was rooted in her sincerely held religious beliefs, the Eighth Circuit found that the Order could be enforced only by a demonstration that application of the burden on Ali was the least restrictive means of furthering

8

a compelling government interest. Id. Because this Court did not evaluate whether the rising requirement was the least restrictive means to further a compelling government interest, the case was remanded for such a determination. "In making this evaluation, the district court must reach a balance between maintaining order and avoiding unnecessary and substantial burdens on sincere religious beliefs." Id. at 711. The Eighth Circuit further directed

> As we have said when applying RFRA to prisons, "[a]lthough we require[ ] the government to meet a higher burden than the rational relation test applicable in constitutional claim cases, we nevertheless accord[ ] a significant degree of deference to the expertise of prison officials in evaluating whether they [meet] that burden." This deference is necessary because Congress intended the RFRA test to "be adjusted for the different contexts in which free exercise claims arise, the prison context being one with special needs." A courtroom likewise is a special context in which special needs arise, requiring a significant amount of discretion to be vested in the district court. Because a party must challenge a court order under RFRA before violating it to avoid criminal contempt liability, courts will have the opportunity to exercise that discretion so that discipline and decorum in the court will not be compromised. On remand, the district court may exercise this discretion as it evaluates whether the pretrial order was the least restrictive means to further a compelling government interest.

**Ali's RFRA Claim**

**A. Compelling Government Interest**

By Order of this Court dated October 3, 2011 [Doc. No. 132], the Court

9

explained that the rising requirement "is to mark the beginning and the end of the court sessions, to show respect for the court system, to assist judges in maintaining order, and to remind all that attention should be paid to court proceedings." [Doc. No. 132 at 1]  The Court 's finding that the rising requirement is necessary, in part, to maintain order in the court, was based on court decisions issued prior to the enactment of RFRA.  See, e.g., In re Chase, 468 F.2d 128 (7th Cir. 1972); Evans v. Ciccone, 377 F.2d 4, 6 (8th Cir. 1967).

In addition, this case was, and continues to be, widely publicized as it involves charges of providing material support to a foreign terrorist organization. Therefore maintenance of order in the courtroom and public safety was of paramount concern to the Court.  See In re Young v. Crystal Evangelical Free Church, 82 F.3d 1407, 1419 (8th Cir. 1996) (citing cases) (finding national security and public safety have been recognized as a compelling government interest).  In addition, the Court was concerned that Ali's refusal to stand could potentially prejudice Ali in the eyes of the jury.

### B. Least Restrictive Means

After identifying the compelling government interest behind the rising requirement, the Court must now determine whether enforcing the rising

requirement through contempt citations was the least restrictive means available to the Court to maintain order - and thus security - in the courtroom. See Hamilton v. Schriro, 74 F.3d 1545, 1552 (8th Cir. 1996).

Ali asserts that, in and of itself, failure to stand when court is called does not disrupt court proceedings, citing to United States v. Snider, 502 F.2d 645 (4th Cir. 1974). In Snider, the Fourth Circuit found that the mere failure to rise upon command is not misbehavior within the meaning of 18 U.S.C. § 401 and does not constitute criminal contempt of court. Id. at 660. While the Fourth Circuit declined to adopt a *per se* rule that failure to rise will constitute contempt of court, this Court notes that Snider decision does recognize that when failure to rise is intended to turn a trial into a forum or circus for the expression of political or religious belief, such conduct may constitute contempt. Id. at 658.

Here, the issue is not Ali's mere failure to stand. Rather, Ali's failure to stand must be evaluated in light of the nature of the charges issued against her and the factual backdrop to such charges - raising funds and other material support for a designated foreign terrorist organization, al-Shabaab. The Court further notes that public sentiment surrounding this case was deeply divided, and the charges evoked strong passions on the part of those who, like Ali,

11

support al-Shabaab, and those who may have been direct or indirect victims of al-Shabaab's terrorist activities. Accordingly, whether requiring Ali to stand to maintain order and to address security and safety concerns, must be evaluated with these considerations in mind. The Court also recognizes that is has a significant amount of discretion, as the courtroom "is a special context in which special needs arise, requiring a significant amount of discretion to be vested in the district court." Ali, 682 F.3d at 711.

Ali argues that there is no support in the record for the trial court's finding that Ali's refusal to stand obstructed court proceedings - i.e. her failure to rise did not distract others or provoke a reaction from others. Here, Ali's conduct did not materially effect her jury trial, jury selection proceeded without incident, and no remarks were made drawing attention to her failure to rise in front of the jury. Ali asks the Court to follow the Fourth Circuit in Snider, which suggested that if a failure to rise did distract, provoke a reaction or cause a failure of silence, "the fault may better be resolved by compelling silence and attention than by coercing a gesture of respect. What others do may constitute misbehavior on their part, but it does not justify the finding of criminal contempt as to the person who simply refuses to stand and does nothing more." Id. 502 F.2d at 659.

12

The government responds, and this Court agrees, that given the purpose of the rising requirement, making an exception for those people who already may be predisposed to question the Court's authority would undermine such purpose and erode the Court's authority and embolden non-risers to further challenge such authority. See Snider, 502 F.2d at 664 (Widener, J., dissenting).

In deciding whether a less restrictive means is available, the Eighth Circuit recognized that

> [i]t would be a herculean burden . . . to refute every conceivable option in order to satisfy the least restrictive means prong of RFRA. Moreover, such an onerous requirement would be irreconcilable with the well-established principle, recognized by the Supreme Court and RFRA's legislative history, that prison administrators must be accorded due deference in creating regulations and policies directed at the maintenance of prison safety and security.

Hamilton, 74 F.3d at 1556.

In this case, given the nature of the charges which involved providing support to a terrorist organization, the fact that the case was high profile and that the charges evoked strong passions on the part of Ali's supporters and detractors, it was imperative that the Court enforce the rules of decorum strictly. It was important that the Court, at the outset, make it known that the court rules would be strictly enforced, given the potential for outbursts or even violence. For the

record, the Court notes that on most days that trial was in session, the court gallery was full of spectators. If Ali were allowed to sit while court is called, it may have been possible that her many sympathizers would have begun to emulate her in a show of support. In fact, towards the end of the trial, a number of spectators did not rise when the "all-rise" call was given. The Court was also concerned that allowing Ali to show disrespect for the Court by failing to rise would encourage additional signs of disrespect, leading to a loss of control in the courtroom.

The Court thus finds that requiring Ali to stand was the least restrictive means available to further the compelling interests of maintenance of order in the courtroom and public safety. Accordingly, the Court finds that its Order requiring Ali to stand when court is called into session or in recess did not violate Ali's rights under RFRA.

**IT IS HEREBY ORDERED** that Defendant Ali is held in contempt of court pursuant to 18 U.S.C. § 401 for those occasions in which she failed to rise when court was called into session and in recess on October 3 and 4, 2011[3], in violation

---

[3]For clarification purposes, this Memorandum Opinion and Order does not involve the first contempt citation, as that was affirmed by the Eighth Circuit.

of the Court's Order dated September 30, 2011 [Doc. No. 130]. The Court will not impose a custodial sentence for these contempt citations[4]. The Defendant's Motion to Set Aside her Contempt Citations [Doc. No. 147] is DISMISSED as moot.

Date: September 19, 2012

                                        s/ Michael J. Davis
                                        Michael J. Davis
                                        Chief Judge
                                        United States District Court

---

[4] The Court would note that at the time Ali notified the Court at the sidebar conference, on the record, that she had changed her mind and would comply with the rising requirement, the Court informed Ali and her counsel to make the appropriate motion so that the contempt sentences would not be imposed.